IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALO, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>NIDIA VERONICA SOTO, an individual, JOHN DOES 1-2, businesses, and JOHN DOES 3-7, individuals,<br><br>        Defendants. | CASE NO. 3:26-cv-00204 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Alo, LLC ("Plaintiff" or "Alo"), by and through its undersigned counsel, files this Complaint against Defendants Nidia Veronica Soto and John Does 1-7, businesses and individuals whose identities are yet unknown but whose names will be added to the proceedings once discovered, and who own and/or assist in running the Vee's Glam business (together "Defendants"), and alleges as follows:

**INTRODUCTION**

1.     Alo is the owner of the well-known apparel and health-and-wellness brand, "alo." Alo has marketed and sold products under the "alo" brand since 2007, and because of its continuous and extensive advertising, promotion, and sales efforts, the "alo" brand has developed considerable goodwill and reputation throughout the United States and internationally, where it is regarded as a premium apparel and health-and-wellness company that specializes in luxury activewear.

2.     Alo's high-quality product offerings range from fashionable athleisure and yoga apparel, accessories, and footwear to skincare and a number of other beauty and wellness products. Alo has a portfolio of ALO and ALO-formative trademarks (the "ALO Marks"). Each of Alo's

1

products bear at least one of its distinctive ALO Marks, and as a result of Alo's significant investment in the promotion of those marks, consumers have come to recognize and rely on the ALO Marks as indicators of Alo's premium products.

3. Defendants are engaged in the unlawful sale of counterfeit "alo" branded products. The sale of such counterfeit products by Defendants has caused consumer confusion and has significantly harmed Alo and the well-earned consumer goodwill associated with its brand. Alo now brings this action to put an end to Defendants' unlawful and infringing conduct and to recover fully for the monetary damages and significant harm to Alo's brand and reputation caused by Defendants.

## THE PARTIES

4. Plaintiff Alo is a California limited liability company with its principal place of business in Los Angeles County, California. Alo's sole member is Alo Alliance, LLC ("Alo Alliance"), a Delaware limited liability company with its principal place of business in Los Angeles County, California. Alo Alliance's members are Color Image Apparel, Inc., a California corporation with its principal place of business in Los Angeles County, California and individuals Daniel Harris and Marco DeGeorge, both domiciled in California.

5. Upon information and belief, Defendant Nidia Veronica Soto is an individual who resides and is domiciled in Dallas, Texas and who sells products using the name Vee's Glams in Dallas, Texas. Defendants Does 1-7 reside, operate, and are domiciled in Dallas, Texas.

## JURISDICTION AND VENUE

6. This action arises under the Lanham Act, 28 U.S.C. § 1051 *et seq.*, and this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because (i) claims herein arise out of federal trademark laws as codified in 15 U.S.C. § 1114 and

15 U.S.C. § 1125(a); and (ii) the Texas state law claims herein are brought with substantial and related claims based on trademark laws.

7. Further, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the pendent state law claims because the claims are so related to Alo's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Defendants because Defendants reside in this District and because Defendants have engaged in business activities in this District, directed business activities at this District, and committed acts with the knowledge that the effects of those acts would be felt by Alo in this District.

9. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and because a substantial part of the events or omissions giving rise to Alo's claims occurred in this District.

## GENERAL ALLEGATIONS

**A.     The ALO Marks**

10. Alo is a California-based apparel and health-and-wellness company. Its mission is to spread mindful movement, inspire wellness, and create community.

11. Alo was founded in Los Angeles, California in 2007 by Danny Harris and Marco DeGeorge, to raise awareness and enthusiasm for yoga by offering high-quality, fashionable yoga clothing to consumers. Alo has operated continuously since its founding and has grown into the well-respected brand it is today. In the United States and around the world, Alo is regarded as a premium apparel and health-and-wellness company, and as a global leader in luxury activewear design and fabrication.

12. Genuine Alo products are exclusively sold through Alo's website (www.aloyoga.com) and its brick-and-mortar stores in the United States and abroad. Alo's product offerings encompass all manner of athletic and yoga-related clothing and accessories, including sneakers, yoga mats, yoga straps, yoga blocks, socks, hats, hair accessories, bags, sunglasses, undergarments, and beauty and wellness products.

13. Alo's products are marketed using the ALO Marks, which are inherently distinctive and serve as signifiers of Alo's premium apparel and other products. Based on that inherent distinctiveness and their significant consumer recognition and goodwill, the ALO Marks are entitled to broad common law trademark rights for goods and services including, but not limited to, athletic and yoga apparel and accessories and retail services for the same.

14. Alo has also successfully registered a number of the ALO Marks with the U.S. Patent and Trademark Office, including but not limited to:

   a. Reg. No. 3875869, ALO, for "men's clothing, namely, pants, shirts, vests, jackets, hooded jackets and women's clothing, namely, pants, shirts, vests, jackets, hooded jackets, sports bras," filed on December 11, 2009, and registered on the Principal Register on November 16, 2010;

   b. Reg. No. 4519311, ALO SPORT, for "men's clothing, namely, shirts, and women's clothing, namely, shirts," filed on March 1, 2012, and registered on the Principal Register on April 22, 2014;

   c. Reg. No. 5172308, ALO YOGA, for "Athletic bags;" "Men's clothing, namely, pants, shirts, jackets, and women's clothing, namely, pants, shirts, jackets, sports bras, tights; Scarves, leg warmers, headbands;" "Yoga mats," filed on August 28, 2015, and registered on the Principal Register on March 28, 2017;

    d. Reg. No. 5172309, ALO, for "Athletic bags;" "Headbands; Leg warmers; Scarves; Tights;" "Yoga mats," filed on August 28, 2015, and registered on the Principal Register on March 28, 2017;

    e. Reg. No. 6137833, ALOSOFT, for "Apparel, namely, bottoms as clothing, bras and sports bras," filed on August 27, 2019, and registered on the Principal Register on August 25, 2020;

    f. Reg. No. 7334270, ALO, for "Retail store and online retail and wholesale store services featuring clothing, apparel accessories, yoga equipment, bags, footwear, headwear, books," filed February 3, 2018, and registered on the Principal Register March 26, 2024;

    g. Reg. No. 7804231, ALO, for "Footwear; Athletic footwear," filed April 23, 2023, and registered on the Principal Register on May 20, 2025; and

    h. Reg. No. 7804336, ALO X 01 CLASSIC, for "Footwear; Athletic footwear," filed May 22, 2023, and registered on the Principal Register on May 20, 2025;

15. Alo has also applied for, and has an approved trademark application at the US Trademark Office for additional ALO Mark including but not limited to:

    a. App. No. 98085815, ALO, for "Headwear; tops as clothing; bottoms as clothing; slippers; boots; sandals; footwear, namely, flip flops; footwear, namely, slides; sneakers; soles for footwear; sleepwear; pajamas; nightgowns; hosiery; lingerie; robes; brassieres; bras; underwear; briefs; boxer shorts; panties; slips being undergarments; undergarments; camisoles; shapewear, namely, control panties, control slips and control garments, namely, control full and half-slips, biker shorts and lingerie; bathing suits; swim trunks; beachwear; beach coverups; swim suits;

5

bikinis; athletic apparel, namely, shirts, pants, shorts, jackets, hats and caps; yoga socks; barre socks; athletic uniforms; sport singlets; sports jerseys; gym shorts; warm-up suits; yoga tops; yoga pants; athletic tights; leggings; sports tights; body suits; sports stockings; socks; sports skirts being tennis skirts; belts for clothing; clothing, namely, base layers; suits; overalls; t-shirts; tank tops; sweaters; bodysuits; sweatshirts; hooded sweatshirts; sweat pants; tankinis; cardigans; pullovers; sport jerseys; skirts; leotards; unitards; dresses; pants; sweatpants; shorts; trousers; shoulder wraps for clothing; clothing wraps; tennis dresses; clothing for dancers, namely, bras, jackets, pants, shorts, close-fitting one-piece garments and jumpsuits; ties as clothing; bandanas being neckerchiefs; wristbands as clothing; caps being headwear; hats; baseball hats; visors being headwear; caps with visors; berets; hoods as clothing; shower caps; sleep masks; maternity leggings, namely, leggings featuring built-in maternity bands; jeggings, namely, pants that are partially jeans and partially leggings; clothing, namely, leggings, tights, stretch pants, camisoles, and shirts containing slimming substances; fabric sold as an integral component of finished clothing items, namely, tights, leggings, yoga pants, leg warmers, leotards, bodysuits, pants, sweatpants, shorts, t-shirts, shirts, tank tops, sweatshirts, sweaters, skirts, dresses, coats, jackets, scarves, arm warmers, gloves, underwear, bras, socks, hats, caps, headbands, belts; trench coats; raincoats; rain jackets; outer jackets; coats; shell jackets; vests; ponchos; kimonos; clothing, namely, neck warmers; muffs; gloves; mittens; waterproof jackets and pants; ear muffs being clothing," filed on July 14, 2023, and with the notice of allowance issuing on August 13, 2024;

b. App. No. 98478666, ALO RECOVERY MODE, for "Footwear; athletic footwear; sneakers; soles for footwear," filed on April 1, 2024, with the notice of allowance issuing on May 6, 2025;

c. App. No. 98590649, ALO RUNNER, for "Footwear; athletic footwear; footwear, namely, sneakers; soles for footwear," filed on June 7, 2024, with the notice of allowance issuing on March 25, 2025;

d. App. No. 99089942, ALOSOFT, for "Tops as clothing; Sleepwear; Hosiery; Lingerie; Underwear; Camisoles; Bathing suits; Beachwear; Athletic apparel, namely, shirts, pants, shorts, jackets, hats and caps; Socks; Warm-up suits; Yoga tops; Yoga pants; Athletic tights; Sports tights; Skirts; Clothing, namely, base layers; T-shirts; Tank tops; Sweaters; Sweatshirts; Hooded sweatshirts; Sweatpants; Dresses; Pants; Shorts; Coats; Gloves as clothing; Headwear; Outer jackets; Fabric sold as an integral component of finished clothing items, namely, tights, leggings, yoga pants, leg warmers, leotards, bodysuits, pants, sweatpants, shorts, t-shirts, shirts, tank tops, sweatshirts, sweaters, skirts, dresses, coats, jackets, scarves, arm warmers, gloves, underwear, bras, socks, hats, caps, headbands, belts," file March 18, 2025, with a notice of allowance issuing on June 24, 2025; and

e. App. No. 99135824, ALO SUNSET SNEAKER, for "Footwear; Athletic footwear; Slippers; Boots; Sandals; Footwear, namely, flip-flops; Footwear, namely, slides; Sneakers; Soles for footwear," filed on April 14, 2025, with a notice of allowance issuing on November 11, 2025.

16. The trademark registrations referenced in Paragraph 14 above are attached hereto as **Exhibit A**. The registrations listed in Paragraph 14 above are subsisting and constitute *prima*

*facie* evidence of the validity of, and Alo's exclusive rights to use, the identified marks. Moreover, Reg. Nos. 3875869, 4519311, 5172308, and 5172309 have achieved incontestable status, and constitute *conclusive* evidence of the validity of, and Alo's exclusive rights to use, the ALO Marks.

**B.     Defendants' Unlawful Sale of Counterfeit Alo Products**

17.     Beginning at a time that is currently unknown to Alo, and without Alo's consent, Defendants unlawfully offered to sell, facilitated the sale of, sold and continue to sell goods that were neither made by Alo nor by its authorized manufacturers, all by using reproductions, counterfeits, copies and/or colorable imitations of Alo products and the ALO Marks ("Counterfeit Alo Products").

18.     For example, a representative of Alo identified a Facebook or Facebook Marketplace seller, Vee's Glam, and an associated OfferUp Seller, Vee's Glam& Fashion, posting apparel bearing the ALO trademark for sale. Screenshots from the Vee's Glam Facebook page, including a screenshot of an October 25, 2025 post, are attached as **Exhibit B**. Screenshots from Vee's Glam& Fashion OfferUp posts are attached as **Exhibit C.**

19.     After communicating with the seller via Facebook Messenger, the Alo representative was provided with a Dallas, Texas residential address at which to conduct a purchase of purported "alo" goods.

20.     On October 25, 2025, the Alo representative was met at the front door of the residence by a woman who identified herself as Nidia and, upon information and belief, is Defendant Veronica Soto. The Alo representative was provided a package of socks bearing the ALO trademark.

21. The socks offered for sale or sold by Defendants each bore at least one ALO Mark and falsely purported to be Alo Unisex Half-Crew Socks. Pictures of the socks offered for sale by Defendants are attached as **Exhibit D**.

22. Alo's representative selected and purchased one pair of socks for a total of $28.00. The purchase was conducted using cash. No tax was charged and no receipt was provided. Alo has inspected the socks purchased from Defendants and has confirmed they are counterfeit.

23. At the time of the purchase, the representative also advised that Defendants had brown long-sleeved "alo" shirts available for $55.00 and would possibly have additional merchandise within two weeks.

24. Upon information and belief, Defendants' unlawful sale, and offering for sale, of such Counterfeit Alo Products was either knowing and intentional, or undertaken with willful ignorance of the counterfeit nature of the products.

**C.    Consumer Confusion and Harm Caused by Defendants' Sale of Counterfeit Alo Products**

25. Defendants do not have the authority to use the ALO Marks or trademarks confusingly similar to the ALO Marks in connection with their goods or services, nor are Defendants affiliated with Alo or otherwise known as Alo.

26. Alo has not authorized any third party, including Defendants, to market or sell apparel or yoga-related products in connection with the ALO Marks. The Counterfeit Alo Products are therefore not manufactured in accordance with Alo's own stringent quality controls but are instead manufactured outside of Alo's knowledge and control, using unknown materials, in unknown locations and with unknown manufacturing requirements and controls.

27. The Counterfeit Alo Products sold by Defendants are also of a substantially lower quality than genuine Alo products.

28. Upon information and belief, Defendants are actively using, promoting, and otherwise advertising, distributing, selling and/or offering for sale Counterfeit Alo Products bearing the ALO Marks with the intent that such goods will be mistaken for genuine Alo products, despite Defendants' knowledge that they do not have authority to use the ALO Marks.

29. As a result of Defendants' activities, there is a high likelihood of confusion between the counterfeit products sold by Defendants, on the one hand, and genuine Alo products, on the other hand, harming Alo's brand and goodwill with consumers, who will be deceived that they are purchasing genuine Alo products when they are not. Purchasers and prospective purchasers using or simply viewing the Counterfeit Alo Products and who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute this issue to Alo, to the detriment of Alo's business and the Alo brand. The harm caused by Defendants' unlawful conduct is ongoing and continues to cause confusion and disappointment to consumers due to the inferior quality of the Counterfeit Alo Products sold by Defendants and due to the suggested affiliation, connection, or association between Alo and Defendants that does not exist, including as to the suggested origin, sponsorship, authorization, and/or approval by Alo of Defendants' sale of those products.

30. Defendants' unauthorized use of the ALO Marks began after Alo legally established the existence and significant value of such trademarks, including after Alo's adoption and use of the ALO Marks and after Alo obtained one or more of the United States trademark registrations listed above.

31. Defendants' unlawful conduct has caused monetary harm to Alo, as well as irreparable harm to Alo's brand and reputation. Without court intervention, Defendants will continue to sell products that infringe on the ALO Marks, to Alo's detriment and to the detriment of deceived consumers.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement – Counterfeit Goods

### 15 U.S.C. § 1114(1)

32. Alo realleges and incorporates by reference each and every allegation in the preceding and foregoing paragraphs.

33. Defendants, without Alo's authorization, used the ALO Marks, or trademarks that are a colorable imitation thereof, in commerce on or in connection with the sale, offering for sale, distribution, promotion, and/or advertising of their goods and/or services, and such use is likely to cause confusion, or to cause mistake, or to deceive.

34. Upon information and belief, Defendants' acts have been committed willfully and with knowledge of Alo's exclusive rights and goodwill in the ALO Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake, and/or to deceive.

35. Alo alleges, on information and belief, that Defendants derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not yet ascertainable, but that will be determined during this action or is to be considered in relation to a request for statutory damages.

36. As a result of Defendants' trademark infringement and counterfeiting, Alo has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the ALO Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

37. As a result of the acts of Defendants, Alo has suffered and will continue to suffer losses, including loss of business opportunities, and, if not permanently enjoined, Defendants will

have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts and infringement.

38. As the acts alleged herein constitute infringement of the ALO Marks in violation of the Lanham Act, 15 U.S.C. § 1114, and as Alo has no adequate remedy at law, Alo is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

39. Further, Defendants' spurious designation of their Counterfeit Alo Products, using the ALO Marks, constitutes knowing use by Defendants of at least one "counterfeit mark" as defined in 15 U.S.C. § 1116(d)(1)(B). As such, Alo reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) or (2). Alo alleges on information and belief that Defendants knowingly and willingly engaged in the acts complained of above with oppression, fraud, malice, and in conscious disregard of Alo's rights. Alo is, therefore, entitled to the maximum statutory damages allowable.

## SECOND CAUSE OF ACTION

**Federal False Designation of Origin and Unfair Competition – Counterfeit Goods**

**15 U.S.C. § 1125(a)(1)(A)**

40. Alo realleges and incorporates by reference each and every allegation in the preceding and foregoing paragraphs.

41. Defendants' acts as alleged herein constitute false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

42. In connection with its goods and services, Defendants, without authorization, used in commerce the ALO Marks or trademarks confusingly similar to the ALO Marks in a manner

that constitutes false designation of origin and/or sponsorship of such goods and services, and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Alo and/or as to the origin, sponsorship, affiliation, or approval of Defendants' goods or services or commercial activities.

43. Upon information and belief, Defendants' acts have been committed willfully and with knowledge of Alo's exclusive rights and goodwill in the ALO Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake, and/or to deceive.

44. Alo alleges, on information and belief, that Defendants derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not yet ascertainable, but that will be determined during this action or to be considered in relation to a request for statutory damages.

45. As a result of the acts of Defendants, Alo has been irreparably harmed. If Defendants are not enjoined from their wrongful conduct constituting false designation of origin as described herein, Alo will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the ALO Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

46. As a result of the acts of Defendants, Alo has suffered and will continue to suffer losses, including loss of business opportunities, and, if not permanently enjoined, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts and infringement.

47. As the acts alleged herein violate the Lanham Act, 15 U.S.C. § 1125(a), and as Alo has no adequate remedy at law, Alo is entitled to injunctive relief as well as monetary damages

and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

## THIRD CAUSE OF ACTION

### False Advertising – Counterfeit Goods

### 15 U.S.C. § 1125(a)(1)(B)

48. Alo realleges and incorporates by reference each and every allegation in the proceeding and foregoing paragraphs.

49. Defendants' actions as alleged herein constitute false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

50. In the commercial advertising and promotion of the Counterfeit Alo Products on Facebook and other online platforms, Defendants, without authorization, used the ALO Marks or trademarks confusingly similar to the ALO Marks in a manner that constitutes a false or misleading representation of fact and misrepresents the nature, characteristics, qualities, or geographic origin of the goods. In particular, the advertising and promotion of Counterfeit Alo Products deceived or was likely to deceive a substantial portion of consumers into believing the products were genuine "alo" branded goods that had their origin with or were otherwise licensed by or affiliated with Alo when they were, in fact, counterfeit.

51. This deception was material in that it is likely to influence and, upon information and belief, did influence consumers' purchasing decisions.

52. The false and deceptive statements have been disseminated in and affect interstate commerce.

53. Upon information and belief, Defendants' acts have been committed willfully and with knowledge of Alo's exclusive rights and goodwill in the ALO Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

54. Alo alleges, on information and belief, that Defendants derived, received, and will continue to derive and receive from the aforesaid acts of false advertising and infringement, gains, profits and advantages in an amount not yet ascertainable, but will be determined during this action or to be considered in relation to a request for statutory damages.

55. As a result of the acts of Defendants, Alo has been irreparably harmed. If Defendants are not enjoined from their wrongful conduct constituting false or misleading representation of fact and unfair competition as described herein, Alo will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the ALO Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

56. As a result of the acts of Defendants, Alo has suffered and will continue to suffer losses, including loss of business opportunities, and, if not permanently enjoined, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their false advertising and infringement.

57. As the acts alleged herein violate the Lanham Act, 15 U.S.C. § 1125(a), and as Alo has no adequate remedy at law, Alo is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

## FOURTH CAUSE OF ACTION

## TEXAS COMMON LAW TRADEMARK INFRINGEMENT

58. Alo realleges and incorporates by reference each and every allegation in the preceding and foregoing paragraphs.

59. Defendants' acts as alleged herein constitute common law trademark infringement under Texas state law.

60. Defendants have common law rights in their distinctive ALO Marks by virtue of their use of the ALO Marks in commerce both in Texas and throughout the United States, which trademark rights long predate any use of the ALO Marks by Defendants. Based on their extensive use of the ALO Marks, the inherent distinctiveness of these marks, and the significant consumer recognition and goodwill Alo has built in the ALO Marks, the ALO Marks are entitled to broad common law trademark rights in Texas and throughout the United States for goods and services including, but not limited to, athletic and yoga apparel and accessories and retail services for the same.

61. Defendants have infringed Alo's trademark rights by using in commerce, without authorization, the ALO Marks or trademarks confusingly similar to the ALO Marks in a manner that constitutes false designation of origin and/or sponsorship of such goods and services, and is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Alo and/or as to the origin, sponsorship, affiliation, or approval of Defendants' goods or services or commercial activities.

62. Upon information and belief, Defendants' acts have been committed willfully and with knowledge of Alo's exclusive rights and goodwill in the ALO Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake, and/or to deceive.

63.     Alo alleges, on information and belief, that Defendants derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not yet ascertainable, but that will be determined during this action.

64.     As a result of the acts of Defendants, Alo has been irreparably harmed. If Defendants are not enjoined from their wrongful conduct constituting trademark infringement, Alo will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the ALO Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

65.     As a result of the acts of Defendants, Alo has suffered and will continue to suffer losses, including loss of business opportunities, and, if not permanently enjoined, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts and infringement.

## FIFTH CAUSE OF ACTION

## TEXAS COMMON LAW UNFAIR COMPETITION

66.     Alo realleges and incorporates by reference each and every allegation in the preceding and foregoing paragraphs.

67.     Defendants' acts as alleged herein constitute common law unfair competition under Texas state law.

68.     As set forth above, Defendants have unlawful infringed Alo's trademark rights and unlawfully deceived and misled consumers through their unauthorized use in commerce of the ALO Marks or trademarks confusingly similar to the ALO Marks on the Counterfeit Alo Products and in promoting the sale of those counterfeit products in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants

with Alo and/or as to the origin, sponsorship, affiliation, or approval of Defendants' goods or services or commercial activities.

69. Upon information and belief, Defendants' acts have been committed willfully and with knowledge of Alo's prior exclusive rights and goodwill in the ALO Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake, and/or to deceive.

70. Alo alleges, on information and belief, that Defendants derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits and advantages in an amount not yet ascertainable, but that will be determined during this action.

71. As a result of the acts of Defendants, Alo has been irreparably harmed and Defendants have interfered with Alo's ability to conduct its business. If Defendants are not enjoined from their wrongful conduct, which constitutes unfair competition under Texas common law, Alo will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the ALO Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

72. As a result of the acts of Defendants, Alo has suffered and will continue to suffer losses, including loss of business opportunities, and, if not permanently enjoined, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts and infringement.

## **PRAYER FOR RELIEF**

Alo respectfully prays for the following relief:

1. For entry of judgment in favor of Alo and against Defendants on each of Alo's claims for relief alleged in this Complaint;

2. For an order that Defendants, their agents, employees, and any related person or entity acting in concert with them, be preliminarily and permanently enjoined and restrained from unlawfully using and/or counterfeiting the ALO Marks, or any mark confusingly similar to the ALO Marks;

3. For an order requiring Defendants and all others acting under Defendants' authority, at their own cost, to deliver for destruction any and all products in Defendants' possession that infringe on the ALO Marks pursuant to 15 U.S.C. § 1118;

4. Pursuant to 15 U.S.C. § 1116, including upon *ex parte* application, an order for the seizure of goods and counterfeit marks, and records documenting the manufacture, sale, or receipt of things involved in trademark violations;

5. For purposes of equitable relief, an order requiring that Defendants provide complete and accurate accountings any ill-gotten gains or illegal transactions entered into from the infringement of the ALO Marks;

6. For an order that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession that rightfully belong to Alo;

7. For a determination that Defendants' acts of trademark infringement and counterfeiting constitute cases of willful and exceptional infringement;

8. For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not otherwise taken into account in the computing of Alo's actual damages;

9. In the alternative to Defendants' profits and Alo's damages for trademark infringement, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of $2,000,000.00 for

each of the counterfeited trademarks willfully utilized by Defendants per type of goods sold, offered for sale, or distributed;

10. For maximum statutory damages available under the law to the extent Alo elects statutory damages for any claim for relief;

11. For reasonable attorney's fees to the fullest extent available under the law;

12. For treble, exemplary, and/or enhanced damages to the fullest extent available under the law;

13. For prejudgment interest and the costs of prosecuting these claims to the fullest extent available under the law;

14. For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate; and

15. For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Alo, LLC, hereby demands trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Dated: January 27, 2026

Respectfully submitted,

*/s/ Jon B. Hyland*
Jon B. Hyland
Texas Bar No. 24046131
jhyland@hilgerslaw.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgerslaw.com

HILGERS PLLC
8750 N. Central Expressway, Suite 750
Dallas, TX 75231
Phone: (469) 751-2819
Facsimile: (402) 413-1880

*Attorneys for Plaintiff Alo, LLC*